IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RICHLAND BOOKMART, INC., ) <br> d/b/a TOWN AND COUNTRY <br> BOOKSTORE; KNOXVILLE ) <br> ADULT VIDEO SUPERSTORE, <br> INC.; and GREG TURNER, d/b/a ) <br> RAYMOND'S PLACE, <br> ) <br> Plaintiffs <br> ) <br> v. <br> ) <br> KNOX COUNTY, <br> ) <br> Defendant <br> ) | No. 3:05-cv-229 |

## **MEMORANDUM OPINION**

The Town and Country Bookstore on Clinton Highway has been operating and selling adult books and videos for more than 20 years. The Knoxville Adult Video Superstore on Lovell Road more recently opened, and plaintiffs contend that its opening induced Knox County Commission to attempt to "strengthen" its adult business regulations. Both of these businesses are "take home" adult video stores that do not permit viewing of the videos on the premises.

Greg Turner operates Raymond's Place on Clinton Highway which is an adult cabaret where female dancers perform in pasties and g-strings. The original complaint in this case was brought only on behalf of the two book and video stores. Raymond's Place was allowed to intervene as a plaintiff.

Currently pending is the defendant Knox County's motion to dismiss plaintiffs' complaint on the basis of lack of subject matter jurisdiction, Rule 12(b)(1), and failure to state a claim upon which relief can be granted, Rule 12(b)(6) [Court File #7]. The subject matter jurisdiction arguments under 12(b)(1) deal with issues related to plaintiffs' standing. For the reasons that follow, the motion will be denied.

I.

*Factual Background*

The following factual background is considered in the light most favorable to the plaintiffs.

Plaintiffs contend that in early 2005, the Knox County Commission became concerned with the opening of a new adult video store on Lovell Road (Knoxville Adult Video Superstore, Inc.) and hired an attorney named Scott Bergthold who is connected with the National Family Legal Foundation (NFLF) to

2

help fight "sexual-oriented business". Bergthold, according to the plaintiffs, is a crusader and attorney who was asked by Knox County to review and strengthen any adult business regulations in Knox County. The County had previously adopted a licensing regulation in both the City and County, which Judge Jordan found unconstitutional in 1990 in *Brothers III v. Knox County*, Civil Action No. 3:89-cv-35. Bergthold drafted this regulation which covers 21 pages and requires the licensing and regulation of the following classifications of "sexually-oriented businesses":

(1) Adult book stores or adult video stores;

(2) Adult cabarets;

(3) Adult motels;

(4) Adult motion picture theaters;

(5) Semi-nude model studios;

(6) Sexual device shops; and

(7) Sexual encounter centers.

The plaintiffs challenge on U.S. and Tennessee constitutional grounds multiple provisions of the ordinance.

Defendant contends that in the fall of 2004, at the request of constituents, the Knox County Commission undertook to update its ordinances regulating the operation of sexually-oriented businesses. The Commission relied on

relevant U.S. Supreme Court decisions such as *City of Littleton v. ZJ Gifts*, 541 U.S. 774 (2004) and *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986) (holding that cities can rely on secondary effects evidence from other jurisdictions, including findings in previous judicial opinions).

On February 22, 2005, at a joint meeting of the County's Intergovernmental and Finance Committees, commissioners heard a detailed presentation concerning secondary effects, as well as objections from the industry and its representatives. At the Commission's regularly scheduled meeting on February 28, the ordinance was passed on first reading. On March 21, 2005, at a second joint meeting of the Intergovernmental and Finance Committees, the commissioners heard additional testimony for and against the ordinance. The transcripts of those meetings are attached to the County's motion to dismiss. The ordinance was passed on March 28, 2005. Plaintiffs filed this lawsuit on May 3, 2005, seeking a preliminary injunction, permanent injunction, and declaratory judgment against the ordinance, challenging its constitutionality on multiple grounds. The actions for preliminary injunction relief were denied because the ordinance is not being enforced until upheld by the court. Relevant portions of the ordinance and any portion which plaintiffs specifically challenge are set out below.

## II.

### *Ordinance Provisions*

The preamble to the ordinance recites the Commission's finding that sexually-oriented businesses, as a category of establishments, are frequently used for unlawful sexual activities, including prostitution, and that there is convincing documented evidence that these businesses have deleterious secondary effects and are often associated with crime and the downgrading of property values. The preamble recites that it is not the intention of the ordinance to suppress any speech activities protected by the U.S. or Tennessee Constitutions, but rather to further the "content-neutral" governmental interests of the County of controlling those secondary effects. Further, the ordinance cites approximately 30 cases from the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and other courts, as well as multiple reports describing these secondary effects. It then makes the following findings: (1) Sexually-oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on property values, urban blight, litter, and sexual assault and exploitation; and (2) sexually-oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such

5

uses, and should be separated from other sexually oriented businesses, to minimize the secondary effects associated with such uses and to prevent an unnecessary concentration of sexually-oriented businesses in one area.

The plaintiffs deny that the Commission took into consideration these cases, studies and secondary effects when enacting the ordinance, but rather simply enacted the ordinance in response to the opening of the video store on Lovell Road and simply wanted to shut it down because of the content of its speech. Plaintiffs deny that the secondary effects had any impact on the Commission and pointed out that Town and Country Book Store has been there for more than 20 years and plaintiffs contend never has caused any adverse secondary effects.

In the definitional section of the ordinance, "adult book store or adult video store" is defined as "a commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration books or [visual representations] which are characterized by their emphasis upon the display of "specified sexual activities" or "specified anatomical areas".

A principal business purpose is defined in an amendment to the ordinance as a business which has 35% or more of adult material. Plaintiffs contend that this limited 35% requirement is overbroad and could include businesses which

should not be regulated such as a mainstream bookstore or a regular video store which had a separate room with adult material in it. Defendant claims that plaintiffs lack standing to raise this question since obviously more than 35% of their stores are clearly adult material. Plaintiffs contend that standing is a much more lenient concept where a statute is challenged on overbreadth grounds because it can affect how people structure further activities and speech.

An "influential interest" in a business is defined as "ownership of a financial interest of 30% or more of a business". This definition is important because the ordinance requires anyone with an influential interest in an adult business to sign the application for the license. Plaintiffs claim that this requirement is a prior restraint on speech.

"Semi-nude or state of semi-nudity" means the showing of the female breast below a horizontal line across the top of the aureola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited by a dress, blouse, shirt, leotard, or other similar wearing apparel provided the aureola is not exposed in whole or in part."

7

That definition was amended later by the Commission when it added the word "bikini" to the last section dealing with the "cleavage of the human female breast". Plaintiffs claim that this definition suffers from overbreadth and ambiguity, particularly after the inclusion of the word bikini. The plaintiffs contend that a reasonable construction of this definition would include in the coverage of the ordinance women dancing in bikinis. Raymond's Place makes the argument that it intends to do whatever it has to do to avoid having to be licensed under the ordinance. Thus, if they cannot tell from the language of the ordinance what the dancers can wear, then the statute must be unconstitutionally overbroad and they have standing to challenge it. The court notes that the language included in the original definition of "semi-nude or state of semi-nudity" has withstood constitutional scrutiny in a number of cases before, including cases that have been to the Supreme Court. However, the language appears ambiguous and it is unclear how the question has been presented in prior cases.

Page 9 of the ordinance defines "specified criminal activity" as follows: "Rape, aggravated rape, aggravated sexual assault, <u>public indecency</u>, statutory rape, rape of a child, sexual exploitation of a minor, and <u>indecent exposure</u>." This definition is important because any of these businesses can lose their license if they hire someone who has committed one of these crimes within the previous five years. Thus, if one of the dancers had been arrested for misdemeanors of public indecency

8

or indecent exposure for taking her pasties off within the previous five years, Raymond's Place could lose its license. Plaintiffs contend that this is a prior restraint on speech. Defendant contends that this section is not a problem because it is not a strict liability revocation of the license. Rather, the license may be revoked only if this section is "knowingly" violated.

On page 17 of the ordinance, it is provided that "no sexually-oriented business shall be or remain open for business between 12:00 midnight and 8:00 a.m., Monday through Saturday, or at all on Sunday or the legal holidays listed in the Tennessee Code Annotated." Plaintiffs contend that these hours of operation restrictions are overbroad and are also preempted by state law in T.C.A. § 7-51-1405, which provides that no local restriction on hours of operation for adult cabarets is permissible.

On page 20 of the ordinance, it is provided that "it shall be a violation of this ordinance for any person to sell, use, or consume alcoholic beverages on the premises of a sexually-oriented business." Plaintiffs do not challenge the County's power to prevent the sale or use of alcoholic beverages at adult cabarets. However, they contend that this section is overbroad and that it might prevent a worker at an adult book store from drinking a beer at work during his lunch break.

9

Finally, section 21 of the ordinance with respect to severability provides that if any section of the ordinance is found to be invalid, that invalidation should not effect enforceability of the other sections of the ordinance. Plaintiffs contend that the doctrine of elision is not favored by the Tennessee Supreme Court and that in any event the unconstitutional portions of the ordinance are so overwhelming that the entire ordinance should be stricken.

### III.
### *Other Considerations*

It should be noted that there are literally hundreds of reported and unreported cases addressing the constitutionality of various adult business licensing regulations and zoning ordinances affecting adult businesses. Not only are there multiple courts of appeal and district court cases, but also a myriad of conflicting Supreme Court opinions. The Sixth Circuit has described interpreting the Supreme Court cases on the regulation of adult entertainment as "reading the tea leaves." *See Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994). Two different standards are used in considering the constitutionality of the provisions of these ordinances. Under the standards set out in *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986), and its progeny, a regulation of adult entertainment is constitutional if it: (1) is a time, place and manner restriction rather than a total ban on adult

entertainment;  (2) targets the negative secondary effects of adult entertainment rather than the entertainment itself;  (3) is narrowly tailored to serve a substantial government interest;  and (4) allows for reasonable alternative channels of communication.  On the other hand, often public nudity ordinances, insofar as they are content-neutral, are evaluated under the four-part test for expressive conduct set forth in *United States v. O'Brien*, 391 U.S. 367 (1968).  According to this test, public nudity ordinances that incidentally impact protected expression should be upheld if they (1) are within the constitutional power of the government to enact;  (2) further a substantial government interest;  (3) are unrelated to the suppression of free expression;  and (4) restrict First Amendment freedoms no greater than necessary to further the government's interest.  *O'Brien*, 391 U.S. at 367-77.  Luckily, these two tests normally produce the same result.  Many courts, in addressing particular statutes, have addressed both standards.

The biggest problem at this time for the defendant is that this is not an appropriate case for resolution solely on a 12(b)(6) motion.  Of the myriad of cases deciding the constitutionality of these regulations, the court can find none, and defendant has identified none, where the constitutionality of an extensive regulation of adult businesses was upheld on a 12(b)(6) motion.  A few are resolved upon motions for summary judgment, but most go to trial.  The court is aware that the preamble of the ordinance sets out the cases and studies which the commissioners

reportedly relied upon in finding the necessary secondary effects. If the commissioners are legislating solely based on the secondary effects, then their acts may well be constitutional. If, however, they are simply attempting to restrict the speech of the adult book stores, then their restrictions are subject to strict scrutiny. Although the Supreme Court allows the County to look to a wide range of sources, including previous judicial opinions, land use studies, or anecdotal reports that recognize the harm targeted or the solution employed to address secondary effects, *City of Erie v. Pap's AM*, 529 U.S. 277, 297 (2000), the plaintiffs should at least be allowed to put on evidence to show that the County was relying on different, inappropriate factors such as the content of the speech.

Rather than rule as a matter of law, as defendant requests, that the ordinance is constitutional in its entirety, the more prudent course is to have a trial or evidentiary hearing in this case to determine what the commissioners actually relied upon in passing this ordinance, or at least submit affidavits and other evidence and resolve the case upon cross motions for summary judgment. Clearly, what the commissioners considered in passing ordinance and the amendment thereto is relevant. Some of the standing issues which have been raised might also be resolved with appropriate affidavits or evidence. At this time this case should be set for trial or at least for a hearing on cross motions for summary judgment. This matter will be referred to the appropriate magistrate judge for a scheduling conference.

Plaintiffs will specifically set out each provision of the ordinance that they contend is unconstitutional and why they have standing.

IV.

*Conclusion*

In light of the foregoing, defendant's motion to dismiss [Court File #7] will be denied, and this matter referred to the Honorable C. Clifford Shirley, Jr., United States Magistrate Judge, for a scheduling conference.

Order accordingly.

                                    **س/ James H. Jarvis**
                                    UNITED STATES DISTRICT JUDGE