IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| RICHLAND BOOKMART, INC., d/b/a TOWN AND COUNTRY BOOKSTORE; KNOXVILLE ADULT VIDEO SUPERSTORE, INC.; and GREG TURNER, d/b/a RAYMOND'S PLACE, | ) ) ) ) | |
| Plaintiffs | ) | |
| v. | ) | No. 3:05-cv-229 (Phillips/Shirley) |
| KNOX COUNTY, | ) | |
| Defendant | ) ) | |


## MEMORANDUM OPINION


This action, brought pursuant to 42 U.S.C. § 1983, challenges the constitutionality of Knox County Ordinance O-05-2-102 ("Ordinance"), which establishes registration and licensing requirements for sexually-oriented businesses. Two of the plaintiffs, Richland Bookmart, Inc. and Knoxville Adult Video Superstore, sell primarily adult books and videos. The other plaintiff, Greg Turner, d/b/a Raymond's Place, operates an adult cabaret. Except with respect to one small redaction, the court finds that the Ordinance is constitutional.

# I.

## *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion.  However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

When both parties have moved for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. Summary judgment is particularly appropriate in a case challenging the facial constitutionality of a statute. *Felix v. Young*, 536 F.2d 1126, 1130 n.7 (6th Cir. 1976).

## II.

### *Factual Background*

The Town and Country Bookstore on Clinton Highway has been operating and selling adult books and videos in Knox County for more than 20 years. The Knoxville Adult Video Superstore on Lovell Road opened more recently, and plaintiffs contend that its opening induced the Knox County Commission to attempt to "strengthen" its adult business regulations. Both businesses are "take home" adult video stores that do not permit viewing of videos on premises. Plaintiff Greg Turner operates Raymond's Place on Clinton Highway, which is an adult cabaret where female dancers perform in pasties and g-strings.

Plaintiffs claim that in early 2005, the Knox County Commission became concerned with the opening of the newer adult video store on Lovell Road and decided to review and strengthen adult business regulations in Knox County. The County had previously adopted a licensing regulation in both the City and County, which was found unconstitutional in 1990 in *Brothers III v. Knox County*, No. 3:89-cv-35. This new regulation covered 21 pages and requires the licensing and regulation of the following classifications of "sexually-oriented businesses":

(1)     Adult bookstores or adult video store;

(2)     Adult cabarets;

(3)     Adult motels;

(4)     Adult motion picture theaters;

(5)     Semi-nude model studios;

(6)     Sexual device shops;  and

(7)     Sexual encounter centers.

Plaintiffs' challenge on U.S. and Tennessee constitutional grounds multiple provisions of the Ordinance.

In the fall of 2004, the Knox County Commission undertook to update its ordinances regulating the operation of sexually-oriented businesses. The County contends that it relied upon relevant U.S. Supreme Court decisions such as *City of*

*Littleton v. ZJ Gifts*, 541 U.S. 774 (2004), and *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986) (holding that cities can rely on secondary effects from other jurisdictions, including findings in previous judicial opinions).

On February 22, 2005, in a joint meeting of the County's Intergovernmental and Finance Committees, commissioners heard a detailed presentation concerning secondary effects.  At the Commission's regularly scheduled meeting on February 28, 2005, the Ordinance was passed on first reading.  On March 21, 2005,  at a second joint meeting of the Intergovernmental and Finance Committees, the commissioners heard additional testimony for and against the Ordinance.  Transcripts of those meetings were attached to the County's motion to dismiss.  The Ordinance was passed on March 25, 2005, and plaintiffs filed this lawsuit on May 3, 2005, seeking a preliminary injunction, permanent injunction, and declaratory judgment against the Ordinance, challenging its constitutionality on multiple grounds.  The actions for preliminary injunction were denied because the Ordinance is not being enforced until and unless it is upheld by this court.  Relevant portions of the Ordinance and any portion which plaintiffs specifically challenge are set out below.

The preamble to the Ordinance recites the Commission's finding that sexually-oriented businesses, as a category of establishments, are frequently used

for unlawful sexual activities, including prostitution, and that there is convincing documented evidence that these businesses have deleterious secondary effects and are often associated with crime and the downgrading of property values. The preamble recites that it is not the intention of the Ordinance to suppress any speech activities protected by the U.S. or Tennessee Constitutions, but rather to further the "content-neutral" governmental interest of the County in controlling those secondary effects. Further, the Ordinance cites approximately 30 cases from the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and other courts, as well as multiple municipal reports describing these secondary effects. It then makes the following findings:

> (1)     Sexually-oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on property values, open blight, litter, and sexual assault and exploitation; and

> (2)     Sexually-oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such uses, and should be separated from other sexually-oriented businesses, to minimize the second effects associated with such uses and to prevent an unnecessary concentration of sexually-oriented businesses in one area.

Plaintiffs deny that the Commission took into consideration these cases, studies, and secondary effects when enacting the Ordinance, but rather enacted the

Ordinance in response to the opening of the video store on Lovell Road and simply wanted to shut it down because of the content of its speech. Plaintiffs point out that the Town and Country Bookstore has existed for more than 20 years on Clinton Highway, and plaintiffs claim it has never caused any adverse secondary effects.

In the definitional section of the Ordinance, an "adult bookstore or adult video store" is defined as "a commercial establishment which, as one of its principle business purposes, offers for sale or rental for any form of consideration any one or more of the following: books or [visual representations] which are characterized by their emphasis upon the display of 'specified sexual activities' or 'specified anatomical areas'". A "principle business purpose" is defined in an amendment to the Ordinance as a business which has 35% or more of adult material. An "influential interest" in a business is defined as "ownership of a financial interest of 30% or more of a business." The Ordinance requires anyone with an influential interest in an adult business to sign the application for the license.

Under the Ordinance, "semi-nude or state of semi-nudity means the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts

exhibited by a dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part." This definition was later amended by the Commission when it added the word "bikini" to the last section dealing with the cleavage of the female breasts.

Also under the Ordinance, an adult business can lose its license if it knowingly hires someone who has committed one or more of certain crimes within the previous five years. Page 9 of the Ordinance defines this "specified criminal activity" as follows: "rape, aggravated rape, aggravated sexual assault, public indecency, statutory rape, rape of a child, sexual exploitation of a minor, indecent exposure" or "dealing in controlled substances" or "racketeering." Page 17 of the Ordinance provides that "no sexually-oriented business shall be or remain open for business between 12:00 midnight and 8:00 a.m., Monday through Saturday, and at all times on Sunday or the legal holidays listed in the Tennessee Code Annotated."

On Page 20 of the Ordinance, it is provided that "it shall be a violation of this Ordinance for any person to sell, use, or consume alcoholic beverages on the premises of a sexually-oriented business."

III.

**_Legal Standards_**

In _Renton v. Playtime Theaters, Inc._, 475 U.S. 41 (1986), the Supreme Court held that if a time, place and manner restriction is content-neutral rather than content-based, the restriction is subject to intermediate rather than strict scrutiny. _Id._ at 46-50.  Such a regulation of adult entertainment is constitutional if it:

>    (1)      is a time, place and manner restriction rather than a total ban on adult entertainment;

>    (2)      targets the negative secondary effects of adult entertainment rather than the entertainment itself;

>    (3)      is narrowly tailored to serve a substantial government interest;  and

>    (4)      allows for reasonable alternative channels of communication.

_Id._

In _City of Los Angeles v. Alameda Books, Inc._, 535 U.S. 425 (2002), Justice Kennedy authored a concurring opinion that slightly modified the _Renton_ framework.  Justice Kennedy's concurrence replaces the _Renton_ inquiry into whether a regulation of adult entertainment is content-neutral with an inquiry into whether the regulation is designed to decrease the negative secondary effects of adult entertainment.  _Id._

9

Under the *Renton* standard as modified by *Alameda Books*, a regulation of adult entertainment is constitutional if it (1) is a time, place and manner restriction rather than a total ban on adult entertainment;  (2) targets the negative secondary effects of adult entertainment rather than the entertainment itself;  (3) is narrowly tailored to serve a substantial government interest;  and (4) allows for reasonable alternative channels of communication.  *Id.* at 448-49.

IV.

**Analysis**

Initially, plaintiffs make the generalized argument that the Ordinance does not attack any secondary effects, but is simply designed to inhibit the speech itself.  The Supreme Court repeatedly has held that local governments have an "undeniably important" interest in combating the adverse secondary effects of sexually-oriented businesses.  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 296 (1977).  In *Renton*, 475 U.S. at 51-52, the Supreme Court clearly held that a local government is not required to conduct its own studies on secondary effects before enacting an ordinance.  Instead, it may rely upon any evidence "reasonably believed to be relevant" to the secondary effects, including evidence from previous judicial opinions, land use studies, or anecdotal reports.  *Id.*  It may also rely upon previous findings in judicial opinions about secondary effects resulting from the

presence of adult entertainment businesses. *Id.* at 50-51. Secondary effects can include a diverse range of problems, including negative impacts on surrounding properties, illicit sexual behavior, litter, and urban blight. *Dejavu of Cincinnati*, 411 F.3d at 789-90 (citing *Richland Bookmart, Inc. v. Nichols* ("*Richland Bookmart I*"), 137 F.3d 435, 440 (6th Cir. 1998) (approving restrictions on adult businesses to prevent the secondary effects of "[r]educing crime, open sex and solicitation of sex and preserving the aesthetic and commercial character of the neighborhood surrounding adult establishments")).

Secondary effects evidence need not consist of empirical data or a scientific study. *See Alameda Books*, 535 U.S. at 438. The party challenging the ordinance has the burden of disproving each secondary effect that the regulation may serve. *Id.* at 438-39. Moreover, a city need not disprove a challenger's theories of secondary effects. *Id.* at 437. While a city bears the burden of proving evidence that supports a link between adult operations and the asserted secondary effects, "it does not bear the burden of providing evidence that rules out every theory for the link. ...." *Id.*

In drafting its Ordinance, the County relied upon relevant U.S. Supreme Court decisions, including *City of Littleton v. ZJ Gifts, D-4, LLC*, 541 U.S. 774 (2004), and *Renton*, 475 U.S. 41. The County also relied on numerous decisions of the

Sixth Circuit and other federal appellate courts concerning the negative secondary effects of sexually-oriented businesses and regulations appropriate thereto, citing 27 reported cases including *ELS, Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir. 1997) (upholding licensing and conduct regulations); *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435 (6th Cir. 1998) ("*Richland Bookmart*") (upholding hours of operation regulation); and *Worldwide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186 (9th Cir. 2004) (rejecting secondary effects challenge brought by "retail-only" adult bookstores)). The County also cited to 20 secondary effects reports from municipalities, including reports from Chattanooga, Tennessee, Spokane, Washington, and Garden Grove, California.

Under the Supreme Court's adult business cases, merely conflicting cases involving secondary effects "is not sufficient to vitiate the result reached in the Board's legislative process." *GM Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631, 639-40 (7th Cir. 2003). The Sixth Circuit has gone further, even holding that an adult business plaintiff "is not entitled to discovery regarding secondary effects." *Dejavu of Nashville v. Metro Government of Nashville & Davidson County*, 466 F.3d 391, 398 (6th Cir. 2006) ("*Dejavu II*"). The Court finds that, as a matter of law, Knox County has demonstrated that its Ordinance was intended to combat the adverse secondary effects of sexually-oriented businesses and not to attack the speech itself.

Plaintiffs challenge the hours of operation (midnight to 8:00 a.m.) limitation set out in the Ordinance. Although a time, place, and manner ordinance must be narrowly tailored, "it need not be the least restrictive or least intrusive means" of serving the government interest. *Dejavu of Cincinnati*, 411 F.3d at 791. Ordinances restricting the hours of operation in adult-oriented establishments have repeatedly been upheld. *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074 (5th Cir. 1986); *Tee & Bee v. City of West Allis*, 936 F. Supp. 1479 (E.D. Wis. 1996); *Broadway Books, Inc. v. Roberts*, 642 F. Supp. 486 (E.D. Tenn. 1986). The court finds that the manner in which the County seeks to regulate the hours of adult businesses is rationally related to the goal of preventing crime and is narrowly tailored to achieve that goal.

Plaintiffs also challenge the section of the Ordinance which forbids the sale or use of alcoholic beverages at sexually-oriented businesses. Plaintiffs suggest that the Ordinance is overbroad in this regard and would prohibit an employee from "drinking a beer" on his lunch hour. However, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). "[T]he mere fact that one can conceive some impermissible applications of a statute is not sufficient to render it susceptible to an

overbreadth challenge." *Id.* at 800. The court finds that forbidding the sale or use of alcoholic beverages at sexually-oriented businesses is a reasonable restriction narrowly tailored to limit the secondary effects of crime.

Plaintiffs also challenge the denial of licensure to persons convicted of certain "specified criminal activity" (*i.e.*, rape, aggravated rape, aggravated sexual assault, public indecency, statutory rape, rape of a child, sexual exploitation of a minor, indecent exposure, prostitution, patronizing prostitution, promoting prostitution, obscenity, dealing in controlled substances, and racketeering). Denial of licensure to those convicted of certain specified crimes that are related to the crime-control intent of the law is permitted. *See Dumas v. City of Dallas*, 648 F. Supp. 1061, 1073-74 (N.D. Tex. 1986).

In this case, two of the crimes, "dealing in controlled substances" and "racketeering" are not related to the crime-control intent of the Ordinance which is to reduce crimes of a sexual nature. Ordinance § 2 Definitions. "Specific Criminal Activity" (a)(4), (5). The inclusion of these two crimes can be severed from the Ordinance without invalidating the entire ordinance. *See* Ordinance § 21 Severability.

Plaintiffs have made various overbreadth or vagueness challenges to various definitions and terms utilized in the Ordinance. For example, plaintiffs claim that the terms "semi-nude" and "semi-nudity" are vague and would not "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1971). However, the Ordinance, as amended, in this case defines "semi-nude" as follows:

> ... the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part.

Ordinance O-05-7-102, § 2.

A regulation is narrowly tailored when it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). A law is <u>not</u> narrowly tailored when the regulation burdens "substantially more speech than is necessary to further the government's legitimate interest." *Id.* In other words, "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden of speech does not serve to advance its goals." *Id.*

It is undisputed that at least some of the businesses that the Ordinance defines as adult cabarets generate secondary effects. Establishments featuring nude dancing generate such effects. *See MDK, Inc. v. Village of Grafton*, 345 F.Supp.2d 952, 957 (E.D. Wis. 2004), *citing RVS, LLC v. City of Rockford*, 361 F.3d 402, 412 (7th Cir. 2004). Under current Supreme Court law, it is also accepted that establishments where dancers wear pasties and g-strings or less generate negative secondary effects. *See, e.g., Pap's A.M.*, 529 U.S. at 289-96 (plurality opinion).

Upon a careful review of the language of the Ordinance, the court finds that in its definition of "semi-nudity", the Ordinance goes no further than regulating businesses in which dancers wear pasties and g-strings. The almost identical language defining semi-nude has been upheld in prior cases, *compare Barnes v. Glen Theatre*, 501 U.S. 560 (1991); *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000). The addition of the word "bikini" in the amendment to the Ordinance does nothing other than make it clear that the Ordinance would not require the regulation of women dancing in bikinis. Therefore, those sections of the Ordinance which regulate adult cabarets are narrowly tailored and, accordingly, survive intermediate scrutiny.

Plaintiffs also contend that the definition of "Nudity or State of Nudity" which is forbidden, is not narrowly tailored. The definition states:

> "Nudity or a State of Nudity" means the showing of the human male or female genitals, pubic area, vulva, anus, anal cleft or cleavage with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple and areola.

The court disagrees. The definition adequately describes the minimum of clothing which the dancers must wear to avoid violation of the ordinance.

The plaintiff book stores next challenge the Ordinance requirement that if a business sells 35% or more of material with adult content, it must be regulated under the Ordinance. Plaintiffs contend that a number of businesses might be included under the Ordinance which do not even have a majority of adult regulated material (*i.e.*, a regular video store with a separate room displaying adult videos). However, both plaintiff book stores in this case are admittedly nearly 100% adult material and therefore these plaintiffs lack standing to raise this hypothetical issue.

Plaintiffs also challenge that section of the Ordinance which requires anyone with a 30% or more interest in an adult business to sign the application for license. In *Eastbrooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 226 (6th Cir. 2005), the Sixth Circuit held that while local governments cannot require all shareholders to be licensed, they can require significant owners of adult businesses

to be licensed.  A number of cases uphold the licensing of adult business owners. *Dejavu of Nashville*, 274 F.3d at 395 (upholding disclosure requirements for certain shareholders);  *Tee & Bee, Inc.*, 936 F. Supp. at 1489 (E.D. Wis. 1996) (upholding disclosure of 10% owners);  *Dumas*, 68 F. Supp. 1061 (upholding 20% disclosure rule).   The County has a need for disclosure of the true owners of these establishments "to aid in the enforcement of criminal laws, public and safety regulations, and income tax laws."  *See Envy, Ltd. v. City of Louisville*, 734 F. Supp. 785, 789-90 (W.D. Ky. 1990).  The court finds that the portion of the Ordinance requiring that owners of 30% or more of adult businesses be licensed is a reasonable time, place and manner regulation.

Plaintiffs next claim that the Ordinance is an unconstitutional prior restraint on speech because it has inadequate procedural safeguards with respect to the licensing of adult sexually-oriented businesses.  The Supreme Court allows licensing of sexually-oriented businesses provided that the Ordinance:  (1) avoids "unbridled discretion" in the licensing decision, (2) requires the licensing decision "within a specified and reasonable time period during which the status quo is maintained," and (3) provides the "possibility of prompt judicial review in the event that the license is erroneously denied."  *Dejavu of Cincinnati*, 411 F.3d at 786.  The court finds that the Ordinance in this case meets these standards. The County may deny a license only based upon "reasonably objective, non-discretionary criteria"

such as whether the applicant is under age, is in an improper location, or has been convicted of specified crimes within the past five years.

Second, regarding the time frame for issuance of a license, § 5(a) of the Ordinance provides that upon filing of a license application, an applicant is given a Temporary License that remains in effect until the County makes a final administrative decision to grant or deny the license. The County is required to issue a license or a written intent to deny a license within 20 days. Ordinance § 5(a). If the County issues a written intent to deny a license, the applicant is given a hearing within 20 days after the written notice is issued. Ordinance § 11(a). The hearing is limited to two days, unless the applicant requires more time, and the Hearing Officer's decision must be rendered within five days after the hearing. Finally, the applicant is entitled to judicial review of the decision which is more than adequate under *City of Littleton v. ZJ Gifts, D-4, LLC*, 541 U.S. 774 (2004). The court finds that the Ordinance has adequate procedural safeguards for the issuance of licenses and for their revocations.

Plaintiffs challenge § 18(c) which makes it a violation for any employee who regularly appears semi-nude to knowingly or intentionally touch a customer or the clothing of a customer on the premises. Plaintiffs argue that a dancer while acting as a waitress might inadvertently touch a customer or his clothing. However,

the court notes that this accidental touching would not be a violation of this section because of the scienter required. The "Supreme Court's interpretation of the narrow tailoring prong in time, place, and manner analyses recognizes the judiciary's limited role in reviewing" ordinances like the one in this case, in which municipalities are to be given "reasonable opportunities to experiment with solutions to admittedly serious problems." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976). The court finds that § 18(c) is a reasonable time, place and manner restriction.

Plaintiffs claim that the licensing requirements for adult motels are not narrowly tailored and are also overbroad. However, none of the three plaintiffs operates motels. Thus, they lack standing to challenge that portion of the Ordinance.

Plaintiffs contend that the Tennessee Adult-Oriented Establishment statute, T.C.A. § 7-51-1401 to 1406, preempts the application of the hours of operation regulation to adult cabarets. T.C.A. § 7-51-1406 provides, "Nothing in this chapter shall preempt or prevent political subdivisions in this state from enacting and enforcing other lawful and reasonable restrictions, regulations, licensing, zoning and other civil or administrative provisions concerning the location, configuration, code compliance or other business operations or requirements of adult-oriented establishments and sexually-oriented businesses." The only limitation the statute

places on local governments is that they may not expand the hours during which adult-oriented establishments may be open. *See* T.C.A. § 7-41-1402(b). The hours of operation provision in the Ordinance is consistent with and therefore not preempted by the state statute.

V.

### Conclusion

In light of the foregoing, the court finds that the Ordinance is constitutional with the exception of one defect. The definition of "specified criminal activity" should have the crimes of "racketeering" and "dealing in controlled substances" redacted from the definition in that they are not directed toward crimes related to the regulated activity. Those provisions may be stricken from the Ordinance without destroying the validity of the remainder. Accordingly, plaintiffs' motion for partial summary judgment [Court File #69] will be denied. Defendant's motion for summary judgment [Court File #70] will be granted except for the elision of the words "racketeering" and "dealing in controlled substances" from the definition of "specified criminal activity."

Order accordingly.

_____*s/ Thomas W. Phillips*_____
UNITED STATES DISTRICT JUDGE